UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Sara G., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 18 CV 50038 |
|  | ) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

The record does not cast plaintiff in the best of light. But as this Court has often noted some Social Security claimants do not present well. Despite this record evidence, a remand is required because the ALJ erred by failing to comply with well established and often repeated Seventh Circuit case law.

In January 2014, plaintiff was 20 years old and living at home with her mother and step-father. She had graduated from high school several years earlier, albeit with the help of special education classes, and had more recently taken classes at a junior college, although she found them difficult and stopped going. She was staying mostly in the house, playing videogames and doing craft projects. She was housebound because she felt nervous around people and suffered from social anxiety as well as depression—two long-standing problems. She still had various artistic and career goals and even aspired to become a marine biologist one day. Around this time, her depression and anxiety worsened. She began monthly counseling with a social worker named Sue Razbadouski. These sessions lasted for six months. Ms. Razbadouski recommended

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

1

concrete steps, such as volunteering at the local zoo, to help plaintiff get a job and eventually move out of her parents' house and achieve independence. But plaintiff found these preliminary steps difficult. It was noted that she had poor social skills and lacked motivation to do most things. In July 2014, plaintiff applied for supplemental security income. After filing her application, testing revealed that she had an IQ in the low average range and also some limitations in working memory and processing speed. Plaintiff claims that these cognitive difficulties, combined with her psychological problems, make it impossible for her to work.[2]

At the administrative hearing, psychologist John Carney testified that plaintiff had moderate limitations in social interaction and concentration, but that she would be able to work at jobs requiring only simple repetitive tasks and occasional interaction with people. Dr. Carney did not provide a lengthy explanation, but his primary argument seems to be that plaintiff got through high school and attended some junior college classes. R. 59, 62. He also noted at one point that plaintiff was not taking any medication specifically for social anxiety, although she was taking Abilify for bipolar disorder. The ALJ relied on Dr. Carney's testimony in finding plaintiff not disabled. However, the ALJ added several RFC limitations to the ones recommended by Dr. Carney.

In her opening brief, plaintiff raised one argument. It was the broad and loosely structured argument that the ALJ relied on a "skewed" version of the facts. *See Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (an ALJ may not ignore a contrary line of evidence). Plaintiff particularly focused on the ALJ's alleged failure to address her clam that she would be "off task" 80% of the day and would miss two or more days a month. To bolster this argument, plaintiff noted that Dr. Carney "waivered on the issue of whether she would be able to complete

---

[2] Plaintiff also suffers from obesity. At the time of the hearing, she weighed 300 pounds. R. 41. But no argument has made that her obesity contributed to her psychological problems or is otherwise relevant to this appeal.

tasks on time" and supposedly "admitted" that her concentration problems "could be related to [her] avoidant personality or her anxiety or depression."[3] Dkt. #9 at 10. Plaintiff also argued that the ALJ glossed over evidence from Dr. Kyle Cushing, a consulting psychologist hired by plaintiff's counsel, and unfairly dismissed a 2016 opinion from Ms. Razbadouski.

In her reply brief, plaintiff reiterated many of these arguments, but also focused more specifically on the ALJ's alleged failure to account for plaintiff's persistence limitations in the RFC formulation. To support this argument, plaintiff cited to only one case, which was *Preusser v. Berryhill*, 2017 WL 3720180, *5 (N.D. Ill. Aug. 29, 2017), where this Court ordered a remand based on a similar argument. In that decision, this Court noted that Seventh Circuit has frequently and emphatically emphasized the need for ALJs to clearly and precisely address the persistence issue. *See O'Connor v. Spinner,* 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."). As the Seventh Circuit has remarked, a claimant's concentration problems can manifest in multiple ways, thus necessitating different RFC limitations to target each of them. *See Brinley v. Berryhill*, 732 Fed. Appx. 461, 465-66 (7th Cir. 2018).

Although the latter argument is relatively narrow, the Court finds that it warrants a remand, especially given the importance attached to this issue by the Seventh Circuit.[4] The relevant portion of the ALJ's decision is the following:

> The undersigned concludes that [plaintiff] has moderate deficits in concentration, persistence, and pace, which cause moderate difficulty in understanding, remembering and carrying out detailed instructions and with maintaining concentration for extended periods. Therefore, she is limited to simple, repetitive, tasks, and due to some persistence and pace deficit, in order to stay acceptably on

---

[3] The alternative default explanation seems to be that her problems were simply due to generalized lack of motivation—in other words, not caused by her mental impairments. *See* Dkt. #9 at 10.

[4] An argument could be made that plaintiff forfeited this argument by not raising it clearly in her opening brief. But given the importance of this issue and given that plaintiff raised this general topic in her opening brief, the Court is reluctant to find it was forfeited.

> task the work must involve routine workplace changes. In addition, production pace could cause her to panic or become annoyed and therefore, she could not perform at production rate pace but she could met end of day goals.

R. 28. To summarize, this passage sets forth three limitations. The first is "simple, repetitive, tasks." This formulation is the one the Seventh Circuit has repeatedly found inadequate. To the ALJ's credit, he recognized this problem, and included two more limitations. The second one— only "routine workplace changes"—was included by the ALJ to specifically address plaintiff's problem of "stay[ing] acceptably on task." This limitation is the most relevant one. The third limitation—that plaintiff "could not perform at production rate pace but she could meet end of day goals"—was included to address the separate problem of panicking or becoming annoyed.

The narrow question then is whether the second limitation adequately addresses plaintiff's alleged inability to concentrate for extended periods. The Court finds that it is not for several reasons. First, insofar as this Court can determine, no expert offered this particular limitation as a solution to plaintiff's particular persistence problem. Therefore, it is based on the ALJ's layperson assessment. But the ALJ did not explain *why* he chose this limitation, nor did the ALJ indicate what amount of time he believed plaintiff would be off task. For example, was it above or below the acceptable 15% threshold mentioned by the vocational expert? Second, as a matter of common sense and logic, the Court is unclear why this limitation would help. If there's one lesson to be gleaned from the *O'Connor-Spinner* line of cases, it is that the simple nature of a discrete job task has no direct connection to the ability to do that task repeatedly over long stretches of time. In fact, if anything, the more routine the task, the *harder* it is to keep focused. Third, the parties have not cited to any case law directly on point, but this Court has found several district courts holding it was *not* adequate. *See Teegardin v. Berryhill*, 2019 WL 1594338, *4 (N.D. Ind. Apr. 11, 2019) (an RFC limitation "to simple instructions/tasks/

4

decisions, and to routine changes in work setting" was insufficient to address persistence problems); *Danalds v. Berryhill*, 2019 WL 912172, *4-5 (N.D. Ind. Feb. 25, 2019) (the RFC limitation to "routine changes in a routine work setting" did not address claimant's "habit of not finishing what he starts"); *Maples v. Berryhill*, 2018 WL 4026290, *11 (N.D. Ind. Aug. 23, 2018) ("Although the ALJ discussed the medical records at length, the ALJ did not offer any analysis of how she determined that Plaintiff's 'difficulty focusing and persisting with some tasks to completion' is addressed by the limitations to simple instructions and routine changes in the work setting."); *Sickler v. Berryhill*, 2018 WL 1409823, *1 (W.D. Wisc. March 21, 2018) (the ALJ failed to provide an adequate explanation for why an RFC limitation to "routine changes" accounted for the claimant's concentration problem).

In sum, the Court finds the ALJ did "not engage specifically enough" with the question of how plaintiff's concentration and persistence difficulties, which the ALJ agreed were present to some undefined extent, were accommodated in the RFC. *Brinley*, 732 Fed. Appx. at 465. Thus, a remand is warranted based on this argument.

But several other issues in the ALJ's decision also were not fully addressed. One is plaintiff's argument that the ALJ too quickly rejected the 2016 opinion provided by Ms. Razbadouski. She treated plaintiff for six months in 2014, then for another six-month period in the first half of 2016. Ms. Razbadouski completed a three-page questionnaire in which she rated plaintiff's abilities as "severe" or "moderately severe" in a number of categories. The ALJ rejected this opinion for two reasons. First, Ms. Razbadouski, a social worker, was not a treating source. Second, her opinion was "extreme." The latter conclusion was explained as follows:

> A fair summary of the medical evidence above and the review from the psychological expert and the state agency psychologists do not support such extreme limitations. Neither do the claimant's low average intelligence and ability to complete some college and attempt to establish a business on the internet.

5

R. 29.

This explanation is conclusory. As a preliminary matter, the ALJ never confronted the substance of her findings. They were not even summarized. The ALJ is correct that Ms. Razbadouski was not an "acceptable medical source" whose opinion must be given controlling weight. But the ALJ failed to acknowledge that Ms. Razbadouski's opinion still should be analyzed under the same checklist of factors used to assess a treating opinion. *See Strobach v. Colvin,* 2014 WL 1388285, *11–12 (N.D. Ill. Apr.9, 2014). For example, no consideration was given to the nature and extent of the treatment relationship.

As for the ALJ's claim that her opinion was inconsistent with other evidence, this is certainly an important issue to consider. But the ALJ provided little concrete explanation. For example, the ALJ suggested Ms. Razbadouski's opinion was at odds with the opinions of the Agency physicians, but the ALJ did not fully endorse those opinions. The ALJ did offer two concrete facts—that plaintiff completed "some college" and made an "attempt" to start an internet business—but these experiences were ambiguous. The junior college classes were discussed at some length at the hearing, but no clear resolution was reached about how well plaintiff fared. Plaintiff testified that she *failed* more than half her courses and did not go to classes consistently. R. 51. The factual record is thus murky. The record is even more undeveloped regarding the internet business. The word "attempt" implies that no successful outcome was achieved. One recurring theme in Ms. Razbadouski's therapy notes was that plaintiff talked ambitiously about her plans, but then struggled to follow through with them.

Another aspect of the ALJ's discussion should be noted. The ALJ gave the "greatest weight" to Dr. Carney's opinion, but this is a mirage of sorts. The ALJ certainly relied on Dr. Carney's bottom-line conclusion that plaintiff could work, although even there the ALJ tinkered

with it by adding RFC limitations. But the ALJ did not rely Dr. Carney's specific rationales in any discernible way. This is mostly because Dr. Carney provided minimal substantive analysis. As a result, the ALJ's rationales were constructed by the ALJ, and therefore can be criticized as doctor playing. These rationales were that plaintiff's problems were caused by inconsistent and conservative treatment and that there was not "sufficient" objective evidence to support her allegations. R. 27-28. The ALJ did not explain what evidence led to these conclusions, except in a few limited instances. Several questions thus remain unanswered. For example, there was some evidence in the record that plaintiff had memory problems. The Court is unsure whether the ALJ discredited this evidence altogether or just found it only supported mild memory problems. The larger point is that the ALJ was not relying on Dr. Carney's testimony. Other than a passing reference to the fact that plaintiff was not taking a medication for social anxiety, Dr. Carney did not discuss the issue of plaintiff's treatment history. These issues should be explored more thoroughly on remand.

In remanding this case, the Court emphasizes that it is not indicating that the ALJ is obligated to find that plaintiff is disabled. The Court is not implying that at all. Nor is this Court suggesting that the ALJ's rationales (*e.g.* conservative and sporadic treatment) cannot be relied upon—assuming they are supported by a medical opinion and other record evidence and then fully explained. But on remand, plaintiff will undoubtedly have to confront questions about her treatment history. For example, she only stayed in therapy for six months in 2014 and then stopped around the time she filed her disability application. She restarted 18 months later in 2018, but when she returned, she stated that her problems were about the same. If true, a reasonable person is left to wonder why she restarted therapy. In this second therapy period, Ms. Razbadouski noted that plaintiff "continue[d] to have an unrealistic view of how things should

7

work." R. 589. These comments raise an important larger question, one which has not been given enough attention in this Court's view, which is whether any method exists to successfully treat plaintiff's problems. The Court notes that Dr. Cushing, who prepared a report in 2016 which partially supported plaintiff's claim by documenting some cognitive limitations, nonetheless at the end of his report encouraged plaintiff to "maintain regular intensive individual psychotherapy" and to contact an organization called RAMP to help her find a job. R. 677. These recommendations rest on the presumption that a more vigorous therapeutic effort might allow plaintiff to work one day. But plaintiff apparently did not follow these recommendations. Again, a reasonable person would want to know why. Plaintiff's position, when pushed to its logical conclusion, is that her problems are "inherent" and thus untreatable, meaning that despite her young age, she will never be able to work and support herself. Dkt. #9 at 12. This Court is not so sure, but leaves this issue, along with the others identified, for the ALJ on remand.

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings.

Date:  May 13, 2019                By:  _____
                                        Iain D. Johnston
                                        United States Magistrate Judge